UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ANTHONY DEWAYNE ISOM,

               Petitioner,

v.

CATHERINE BAUMAN,

               Respondent.

Case No. 2:18-cv-112

Honorable Janet T. Neff

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

I. **Factual Allegations**

Petitioner Anthony Dewayne Isom is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Michigan. Following a jury trial in the Berrien County Circuit Court, Petitioner was convicted of armed robbery, Mich. Comp. Laws § 750.529. On February 29, 2016, the court sentenced Petitioner to a prison term of 6 to 15 years.

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> The robbery occurred on the morning of July 28, 2015. The victim, who testified through a Spanish language interpreter, walked from her place of employment, a charter school, to a nearby gas station to purchase lunch. While walking back from the gas station, she noticed two people running up behind her. She did not know why they were running, but when they got close to her one of them said, "She, she," and then, "Get it. Get it." One grabbed her from behind and the other put a pistol to her chest. The man who held the pistol to her chest grabbed her bag from the store and threw the things on the ground. The bag had the items she bought from the store and her wallet in it. She had her "papers and $20" in her wallet. The man with the pistol took her wallet from the bag and then both men ran in the direction of the charter school; then they ran off together in the direction of an apartment complex behind the school. The victim returned to the school and contacted the police, who found the victim to be distraught and to have urinated on herself; she also had a welt on her chest around her sternum.
>
> The responding officer testified that the victim described both men as having "braid hair styles." The man with the gun wore a light colored shirt and jeans and had something black on his shoulder; and the other was skinnier and wore a dark shirt and dark pants. He testified that the victim described the men as being between 5'6" and 5'10" in height, although his report indicated that she had described them as being from 5'10" to 5'11" in height. She also told him that she had earlier seen the men at the gas station where she purchased her food. The victim testified that she had noticed the two men who robbed her while she was in the store because the man with the gun had been next to her when she paid. The officer reviewed security footage from the gas station and identified two men in the video who matched the victim's description of the perpetrators.
>
> Defendants were detained at the apartment complex an hour and a half to two hours after the robbery. Officers identified them as the men in the gas station security

footage; however, they were not wearing the same clothing. Isom had an apartment in the complex, which officers searched with his permission. They found a blue bag, .38 caliber bullets, a gun lock, and a "corner baggie" containing a substance that tested positive for cocaine. Neither a firearm nor the victim's money or effects were ever recovered. Johnson admitted to officers that he had stayed the night at Isom's apartment; in an interview with police, he denied having gone to the gas station, but later admitted that he, in fact, had gone there after he was shown a picture from the security video.

(Mich. Ct. App. Op., ECF No. 1-3, PageID.52-53.) Petitioner offers a factual summary with more detail, (ECF No. 1-1, PageID.18-22), including the following:

[The victim] testified that the two men who robbed her were inside the gas station while she was shopping there (T2 21-22). [She] testified about the gas station video and pointed out the two suspects standing near her inside the store (T2 25-26). . . . [She] was unable to identify the suspect that was behind her during the robbery (T2 27, 30). She was able to see the person's face that held the gun pointed at her (T2 33). [She] identified Petitioner's co-defendant Aquarius Johnson as the man with the gun (T2 39).

(Pet., ECF No. 1-1, PageID.19.) Neither Petitioner nor Johnson testified.

The jury convicted Johnson of armed robbery, felony firearm, Mich. Comp. Laws § 750.227b, and felon in possession of a firearm, Mich. Comp. Laws § 750.224f. The jury convicted Petitioner of armed robbery and possession of cocaine,[1] but acquitted Petitioner of felony firearm.

Petitioner, with the assistance of counsel, directly appealed his convictions raising two issues: the evidence that Petitioner committed the armed robbery was legally insufficient and it was unfair to try him jointly with Mr. Johnson. (Pet'r's Br. on Appeal, ECF No. 1-2, PageID.29.) The Michigan Court of Appeals denied relief by unpublished opinion issued August 22, 2017. (Mich. Ct. App. Op., ECF No. 1-3, PageID.52-59.) Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the court

---

[1] Petitioner's sentence for the cocaine offense, 216 days, was served to completion long before he filed this petition. Petitioner is challenging only his armed robbery conviction here.

3

of appeals. (Pet'r's Appl. for Leave to Appeal, ECF No. 1-4, PageID.63, 68.) The supreme court denied leave by order entered April 3, 2018. (Mich. Order, ECF No. 1-5, PageID.77.)

On July 10, 2018, Petitioner filed his habeas corpus petition. The petition raises two grounds for relief, the same issues Petitioner raised in the Michigan appellate courts:

> I. Petitioner's Fifth and Fourteenth Amendment rights to due process were violated because the state presented legally insufficient evidence that the petitioner committed the armed robbery and as such his convictions should be vacated.
>
> II. The trial court denied Petitioner's Fifth and Fourteenth Amendment rights to due process and a fair trial by trying Petitioner jointly with a co-defendant because the corroborating evidence as to his co-defendant prejudiced Petitioner.

(Pet., ECF No. 1, PageID.18, 23.)

## II. AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the

4

Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by

5

clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Sufficiency of the Evidence

Petitioner does not challenge the sufficiency of the evidence with respect to the occurrence of the robbery. Instead, he contends the prosecutor introduced insufficient evidence to show that Petitioner was one of the robbers.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at

two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Although the Michigan Court of Appeals relied on state law, it applied a standard identical to the *Jackson* standard when it rejected Petitioner's claim that the evidence was insufficient:

> We review a challenge to the sufficiency of the evidence de novo to determine whether the evidence, when viewed in the light most favorable to the prosecution, could permit a rational trier of fact to find the essential elements of the charged offense proved beyond a reasonable doubt. *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009); see also *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

(Mich. Ct. App. Op., ECF No. 1-3, PageID.53.) The Michigan Court of Appeals then sifted through the evidence to determine whether the circumstantial evidence presented could support the jury's conclusion that Petitioner was one of the robbers:

> As noted, defendants only argue that they did not participate in the robbery, not that the robbery did not occur. Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The prosecution may prove identity through direct or circumstantial evidence. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). This Court applies the same standard of review to a trial court's decision to deny a motion for a directed verdict. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).
>
> At trial, the victim positively identified Johnson as the man who held the gun to her chest, which was sufficient by itself to support the identity element. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Johnson challenges her credibility, but we do not interfere with the jury's role in evaluating a witness's credibility, even if the witness's testimony is vague or inconsistent. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); see also *Wolfe*, 440 Mich at 514-515. We may only disregard testimony when it has been deprived of all probative

7

value or is such that a rational jury could not believe it. *People v Lemmon*, 456 Mich 625, 645-646; 576 NW2d 129 (1998).

The victim described the robbers as having braided hair. Johnson and Isom both had braided hair. She described the man in white, Johnson, as being chunkier and dark-skinned. Both of those descriptions are relative and are influenced by the conditions attending the witness's observation, such as clothing and lighting, and involve some level of subjectivity. A reasonable jury could conclude that her description of Johnson was accurate under the totality of the circumstances. There was also some testimony that the victim described one of the robbers as being shorter—5'3"—but there was also testimony that she stated that they were approximately 5'10" in height. She also indicated that the man who held her arms wore black, whereas Isom was wearing blue in the videos. The variations in her statements and any discrepancies between her original description and the video evidence were not so significant that this Court would be justified in disregarding her testimony and were certainly all presented to the jury.

The victim admitted that she did not see the face of the man who grabbed her from behind, and she was unable to pick anybody out of a six-person lineup she viewed after the robbery. However, she also testified that the men who robbed her were the same men she saw at the store. An officer testified that she told him that same thing when he responded to the call about a robbery just minutes after the event. She described the men and, although there were some discrepancies, Johnson and Isom's appearance matched her description. The victim testified that the men ran off toward the River Terrace Apartments after the robbery, and an officer testified that Johnson and Isom were arrested at the apartments about an hour and a half to two hours later. There was ample evidence that Isom was at the store when the victim was present making her purchases, apparently arriving at the same time as Johnson and exchanging a look with Johnson as they left. Additionally, the evidence indicates that she had some opportunity to observe the man as he ran up to her and ran away, at least sufficient to match general characteristics with that of a person at the gas station notwithstanding misidentifying blue clothing as black. Defendants' change of clothing shortly after their presence at the gas station and after the robbery might have an innocent explanation, but a rational jury could also reasonably infer that they did so for the purpose of evading arrest by altering their appearances. See *People v Kowalski*, 489 Mich 488, 509 n 37; 803 NW2d 200 (2011). The jury could also consider the incongruity of possessing ammunition and a gun lock without a gun as circumstantially supporting a finding of guilt.

As noted, defendants do not challenge the occurrence of the armed robbery, only the identity of the perpetrators. We conclude that adequate evidence was presented for a rational trier of fact to find beyond a reasonable doubt that defendants were the two men who committed the armed robbery. *Roper*, 286 Mich App at 83; *Kern*, 6 Mich App at 409-410. Accordingly, the trial court did not err when it denied Isom's motion for a directed verdict. *Gillis*, 474 Mich at 113.

(*Id.*, PageID.53-55.)

The state appellate court applied the *Jackson* standard faithfully. Therefore, it cannot be said that its determination of the sufficiency issue is contrary to *Jackson*, the clearly established federal law on the issue. Moreover, Petitioner has failed to show that the appellate court applied the standard unreasonably. Indeed, Petitioner does not attack the Michigan Court of Appeals' application of *Jackson* at all. He simply identifies the evidence—the same evidence relied upon by the court of appeals—and asks this Court to reach a different conclusion. Petitioner's argument ignores the deference this Court owes to the state courts under § 2254. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). The state court's analysis and determinations here are reasonable. Because Petitioner has failed to demonstrate that the state court's determinations were contrary to, or an unreasonable application of, *Jackson*, he is not entitled to habeas relief on his sufficiency challenge.

IV. Joint Trial

Petitioner next contends that, because he was tried jointly with Johnson, the trial was fundamentally unfair. Petitioner argues that the jury was tainted by the victim's positive identification of Johnson and Johnson's prior conviction of a felony offense[2] when deciding Petitioner's guilt. Petitioner's argument in the Michigan appellate courts—the same argument he presents here—is blended. It is based in significant part on state law regarding the circumstances that permit or preclude joinder; but, he also claims that joinder here violated his due process rights. The Michigan Court of Appeals did not expressly address the federal constitutional implications of joining the charges against Petitioner and Johnson in one trial:

> Defendants both also argue that the trial court erred in granting the prosecution's motion to consolidate their charges for a single trial. We review the trial court's ultimate decision whether to join or sever multiple defendants' trials for an abuse

---

[2] Evidence of Johnson's prior felony was introduced in support of the felon-in-possession charge.

9

of discretion.  *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994).  We review de novo any underlying interpretation of the law or court rules, and we review for clear error any underlying factual determinations.  *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009).  A trial court necessarily abuses its discretion when it premises its decision on an error of law.  *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).  However, even if the trial court erred, it would not be grounds for reversal unless "it affirmatively appears that it is more probable than not that the error was outcome determinative."  *Williams*, 483 Mich at 243-244.

As an initial matter, the trial court clearly was not permitted to join Isom's cocaine possession charge with Johnson's trial under MCR 6.121(A).  Under MCR 6.121(A)(1), defendants were not both charged with that offense.  Under MCR 6.121(A)(2), Isom's cocaine charge was based on a purely incidental discovery totally unrelated to the acts involved in the robbery or firearms charges, so there is no basis to conclude that it was "related."  See, e.g., *People v Beets*, 105 Mich App 350, 353; 306 NW2d 508 (1981).  However, although the evidence of the cocaine was irrelevant to any of Johnson's charges and thus inadmissible against him, see MRE 401 and 402, it was not in fact admitted against him, and any minimal prejudice it might have caused could have been cured by an instruction to the jury.  See *People v Pinkney*, 316 Mich App 450, 476-477; 891 NW2d 891 (2016).  We are unable to discern how joinder of the cocaine charge could even possibly have prejudiced Isom on that charge.  This error was clearly harmless.

Otherwise, the remaining offenses are obviously related and we find the trial court clearly was empowered to join the trials.  Defendants nevertheless argue that they were prejudiced such that the trial court's decision was an abuse of discretion.  We disagree.  Johnson argues that the consolidation undermined the evidence that the victim was unable to pick him out of a lineup, and the jury might have conflated him with Isom and thereby ignored the evidence that the victim could not identify him.  Conversely, Isom argues that the identification evidence against Johnson was stronger and would mostly not have been admissible against him at a solo trial, and Johnson's prior conviction also likely prejudiced him.  We disagree with both defendants.

Both defendants appeared in the video taken from the gas station.  Both defendants were described as participating in the robbery.  Both were arrested at the same apartment complex after both having changed their clothing.  There was testimony that they shared an apartment together the prior night.  We find that they were so closely linked to each other and to the robbery at so many points that any testimony and evidence tending to identify either of them would have tended to make it more probable that the other was involved in the robbery, and thus inexorably would have been relevant and admissible against the other, irrespective of whether they were codefendants.  Thus, the identification testimony actually adduced at their consolidated trial would have been the same had they been tried separately.  The consolidated trial did not undermine either defendant's ability to challenge identification evidence. . . . Other than the evidence of the cocaine addressed above,

> neither party could have been prejudiced by the consolidation, so the trial court did
> not err in granting the consolidation or in [not] sua sponte severing the trials.

(Mich. Ct. App. Op., ECF No. 1-3, PageID.55-57.) The appellate court's analysis is premised on Michigan Court Rule 6.121 as interpreted in *People v Hana*, 524 NW2d 682 (1994). The *Hana* case, in turn, applies the analysis of the Supreme Court in *Zafiro v. United States*, 506 U.S. 534 (1993), a case applying and interpreting Federal Rules of Criminal Procedure 8 and 14, to the parallel provisions in the Michigan Court Rules and statute. *Hana*, 524 N.W.2d at 686-93. Neither *Hana* nor *Zafiro*, however, directly address the federal constitutional implications of joint trials. The Sixth Circuit has recognized that *Zafiro* is based on the Federal Rules of Criminal Procedure, not constitutional grounds. *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004) ("*Zafiro* involved the interpretation of Federal Rules of Criminal Procedure 8, 14, and 18, not the United States Constitution. *Zafiro* thus has no precedential weight in reviewing state court proceedings on due process grounds. . . .").

There is no decision of the United States Supreme Court clearly establishing a right under the Due Process Clause to separate trials or juries. Joint trials play a vital role in the criminal justice system. *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Joint trials generally serve the interests of justice by avoiding inconsistent jury verdicts and facilitating the efficiency and fairness of the criminal justice system. *Id.* at 209-10.

The Supreme Court has delineated few constitutional rules in this area. The Court has held that separate trials are constitutionally required where the prosecution intends to introduce the confession of a co-defendant which incriminates another defendant. *See Bruton v. United States*, 391 U.S. 123, 137 (1968). The *Bruton* decision is premised on the reality that a juror cannot be expected to take into account a defendant's confession with respect to the confessor but blithely disregard it with respect to a co-defendant that is implicated by the confessor.

11

The constitutional foundation of the *Bruton* decision is the Confrontation Clause. Thus, if no out-of-court statements of a co-defendant is introduced; if the out-of-court statements do not implicate another co-defendant; or if the co-defendant whose out-of-court statement is introduced is subject to cross-examination, there is no Confrontation Clause problem.

Here, Petitioner does not point to any out-of-court confession by his co-defendants that specifically implicated him. Beyond the *Bruton* rule, the Supreme Court has left the matter of severance to state law and the trial judge's discretion. The Court remarked in *United States v. Lane*, 474 U.S. 438 (1986), that the denial of a motion for severance does not in and of itself implicate constitutional rights. The Constitution is implicated only when the failure to sever trials is so prejudicial that it imperils a defendant's right to a fair trial. *Id.* at 446 n.8. Consequently, a "petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendants bears a very heavy burden." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

Petitioner premises his unfairness argument on the existence of "spillover" evidence. Specifically, Petitioner claims that the victim's very specific identification of Johnson or Johnson's prior felony conviction might prompt the jury to find Petitioner guilty. The mere existence of "spillover" prejudice is not sufficient, under the court rules or the constitution, to warrant severance. Petitioner "must point to specific 'substantial,' 'undue,' or 'compelling' prejudice." *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014).

Where the testimony would be independently admissible against Petitioner, he cannot establish any prejudice. *Id.* The Michigan Court of Appeals concluded that the testimony regarding the victim's identification of Johnson would have been admissible against Petitioner in a separate trial. (Mich. Ct. App. Op., ECF No. 1-3, PageID.56.) The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84

(1983). "'[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)). Thus, the Michigan Court of Appeals' determination regarding the admissibility of the identification evidence conclusively resolves the issue and precludes a finding of any "spillover" prejudice here.

The state appellate court also determined that the evidence of Johnson's prior conviction did not prejudice Petitioner. (Mich. Ct. App. Op., ECF No. 1-3, PageID.57) ("Other than the evidence of the cocaine addressed above, neither party could have been prejudiced . . . ."). In response, Petitioner offers no evidence—and certainly not clear and convincing evidence—to show that he suffered any prejudice—much less substantial, undue, or compelling prejudice—from the introduction of the challenged evidence. Petitioner has, therefore, failed to demonstrate that the state court's rejection of his "joint trial" challenge is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of

13

Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

14

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated: November 7, 2018          /s/ Janet T. Neff
                                 Janet T. Neff
                                 United States District Judge